## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| USI Senior Holdings, Inc., *et al.*,[1] | Case No. 09-11150 (MFW) |
| Reorganized Debtors. | Jointly Administered |
| | Objection Deadline: August 14, 2009, 4:00 p.m.<br>Hearing Date: August 21, 2009, 10:30 a.m. |

## FIRST AND FINAL FEE APPLICATION OF ALVAREZ & MARSAL SECURITIES, LLC FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR TO THE DEBTORS FOR THE PERIOD APRIL 1, 2009 THROUGH JUNE 30, 2009

| | |
|---|---|
| Name of Applicant: | Alvarez & Marsal Securities, LLC |
| Authorized to Provide Professional Services to: | Debtors and Debtors in Possession |
| Date of Retention: | Order entered April 23, 2009 [*Docket No. 68*] *Nunc Pro Tunc* to the petition date |
| Period for which compensation and reimbursement is sought: | April 1, 2009 through June 30, 2009 |
| Amount of compensation sought as actual, reasonable and necessary: | $2,900,000.00 |
| Amount of expense reimbursement sought as actual, reasonable and necessary: | $2,219.87 |

This is a: ___ monthly ___ quarterly  X  final application.

This is Alvarez & Marsal Securities, LLC's first and final fee application in this case.

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: USI Senior Holdings, Inc. (1964); United Subcontractors, Inc. (2162); USI Intermediate Holdings, Inc. (2073); San Gabriel Insulation, Inc. (8715); Construction Services & Consultants, Inc. (8848); and Tabor Insulation, Inc. (8179).

## Summary of Alvarez and Marsal Securities, LLC Monthly Fee Applications

| Date & Docket No. | Filing Period | Requested Fees | Requested Expenses | CNO Date & Docket No. | Approved Fees | Approved Expenses | Unapproved Holdback |
|---|---|---|---|---|---|---|---|
| May 20, 2009<br><br>Docket No. 110 | 4/1/2009 through 4/30/2009 | $100,000.00 | $765.00 | 6/12/2009<br><br>Docket No. 145 | $80,000.00 | $765.00 | $20,000.00 |
| June 30, 2009<br><br>Docket No. 195 | 5/1/2009 through 5/31/2009 | $100,000.00 | $589.00 | 7/22/09<br><br>Docket No. 205 | $80,000.00 | $589.00 | $20,000.00 |

## Timekeeper Summary

| Timekeeper | Position | Description | Rate[1] | Hours |
|---|---|---|---|---|
| G. Varughese | Managing Director | Investment Banking Services | | 13.5 |
| M. Belanger | Managing Director | Investment Banking Services | | 34.5 |
| E. Suttiratana | Director | Investment Banking Services | | 15.7 |
| A. Roluga | Analyst | Investment Banking Services | | 13.5 |
| | | | **Total** | **77.2** |

---

[1] Pursuant to the Engagement Letter between A&M and the Debtors dated as of January 10, 2009, attached as Exhibit C to the Debtors' application to retain A&M as financial advisors [*Docket No. 29*] as approved by the Court's April 23, 2009 order approving A&M's retention [*Docket No. 68*], A&M is entitled to a fixed Monthly Fee and Restructuring Transaction Success Fee (each as defined in the Engagement Letter) for its services. Accordingly, A&M has not attributed an hourly rate to the services it has provided.

927082v.1/34153

## Expense Category Summary

| Expense Category | Amount |
|---|---|
| Transportation | $2,219.87 |
| **Total** | **$2,219.87** |

927082v.1/34153

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| USI Senior Holdings, Inc., *et al.*,[1] | ) | Case No. 09-11150 (MFW) |
| | ) | |
| Reorganized Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Objection Deadline: August 14, 2009, 4:00 p.m. |
| | ) | Hearing Date: August 21, 2009, 10:30 a.m. |

## FIRST AND FINAL FEE APPLICATION OF ALVAREZ & MARSAL SECURITIES, LLC FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES AS FINANCIAL ADVISOR TO THE DEBTORS FOR THE PERIOD APRIL 1, 2009 THROUGH JUNE 30, 2009

Alvarez & Marsal Securities, LLC ("A&M"), financial advisor to reorganized United Subcontractors, Inc. and its affiliates that were debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases, pursuant to sections 328 and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), hereby submits this final application (this "Application") for allowance of compensation and fees for services rendered and reimbursement of expenses incurred for the period April 1, 2009 through and including June 30, 2009 (the "Application Period"). A&M respectfully requests that the Court enter an order awarding A&M final compensation in the amount of $2,900,000.00 for professional services rendered and $2,219.87 for ordinary and necessary

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's federal tax identification number, are: USI Senior Holdings, Inc. (1964); United Subcontractors, Inc. (2162); USI Intermediate Holdings, Inc. (2073); San Gabriel Insulation, Inc. (8715); Construction Services & Consultants, Inc. (8488); and Tabor Insulation, Inc. (8179).

927082v.1/34153

expenses incurred during the Application Period. In support of the foregoing request, A&M respectfully states as follows:

## Preliminary Statement

1. The Debtors and their management, with the assistance of their professionals, substantially de-leveraged their balance sheet and formulated and confirmed a consensual chapter 11 plan of reorganization in less than three months. The expedited, and ultimately consensual, nature of these cases preserved millions of dollars in value for the benefit of the Debtors' creditors. The Debtors' reorganization plan converted approximately $356.5 million in funded indebtedness (both secured and unsecured) into equity in the reorganized Debtors and into a $22.5 million new secured note. The reorganization plan provides a $12 million cash payment to the Debtors from certain entities who backstopped a prepetion letter of credit in favor of the Debtors' senior lenders. This cash and the cash on hand on the effective date of the plan provided the Debtors with $34 million of cash to fund operating expenses after the effective date of the plan. In addition, the plan provided for the payment in full of all of the Debtors' trade creditors. As a result of these efforts, the Debtors have emerged from chapter 11 with substantially less debt, streamlined operations, and a much stronger balance sheet. In short, these chapter 11 cases created a stronger and healthier company, well-positioned for future growth and for vigorous competition within the construction industry. A financially-stable reorganized United Subcontractors, Inc. will benefit the Debtors' prepetition creditors that now hold equity in the reorganized company, as well as their employees, vendors and customers.

2. As the Debtors' financial advisor, A&M played a significant role in the Debtors' successful reorganization. Prior to the Petition Date (defined below), A&M was instrumental in bringing various parties in interest to the barganing table and negotiating the terms of the Debtors' pre-arranged bankruptcy filing. Additionally, A&M, together with the Debtors'

bankruptcy counsel Proskauer Rose LLP ("Proskauer"), assisted the Debtors in navigating the chapter 11 process and in implementing a successful reorganization strategy. A&M's contributions to the Debtors' reorganization included, without limitation, assisting the Debtors in:

 a. evaluating their business plan for their ongoing operations, developing projections and forecasts, and analyzing capital and funding requirements;

 b. negotiating the terms of the New Management Incentive Plan, the cash collateral budget, the New Senior Secured Term Loan, the New Senior Secured Notes, and other financial aspects of the Plan;

 c. formulating and analyzing various restructuring options (including the Plan);

 d. negotiating the Plan Support Agreement; and

 e. negotiating with creditors and other parties in interest to obtain their support for the Plan.

3. A&M's efforts, advice and assistance throughout these chapter 11 cases undoubtedly contributed to the maximization of value for the benefit of the Debtors' creditors and estates.

## Jurisdiction

4. The Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Application is a core proceeding pursuant to 28 U.S.C. § 157(b).

5. The statutory and rule-based predicates for the relief requested herein are sections 328 and 330 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Rule 2016-2.

## Background

6. On March 31, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. By an order entered April 2, 2009,

the Debtors' chapter 11 cases were consolidated for procedural purposes only and are being jointly administered.

7. Prior to the Petition Date, with the assistance of A&M and Proskauer, the Debtors, the Consenting First Lien Lenders, and the Consenting Second Lien Lenders reached an agreement on the terms of a plan of reorganization. That agreement was incorporated into the Restructuring, Settlement and Plan Support Agreement by and among the Debtors, the Consenting First Lien Lenders, and the Consenting Second Lien Lenders dated as of March 31, 2009 (the Plan Support Agreement"). The Plan Support Agreement incorporated a term sheet that set forth the principal terms of the reorganization plan agreed upon between the Debtors, the Consenting First Lien Lenders, and the Consenting Second Lien Lenders (the "Term Sheet").

8. On April 24, 2009, the Debtors filed the Disclosure Statement with respect to the Joint Chapter 11 Plan of Reorganization dated as of April 24, 2009 and the Joint Chapter 11 Plan of Reorganization dated as of April 24, 2009.

9. On May 18, 2009, the Debtors filed the Amended Disclosure Statement with respect to the Amended Joint Chapter 11 Plan of Reorganization Dated as of May 18, 2009 (the "Disclosure Statement") and the Amended Joint Chapter 11 Plan of Reorganization Dated as of May 18, 2009 (the "May 18 Plan"). The terms of the Plan Support Agreement and the related term sheet were incorporated into the May 18 Plan.

10. On May 21, 2009, the Court entered an order approving the Disclosure Statement and the Debtors' proposed solicitation procedures and directing the Debtors to commence solicitation of votes to accept or reject the May 18 Plan.

11. The Debtors' creditors overwhelmingly voted in favor of accepting the May 18 Plan. The confirmation hearing commenced on June 25, 2009. The Court entered an order

4

confirming the Plan (a modified version of the May 18 Plan) on June 25, 2009. The Plan became effective on June 30, 2009.

12. A&M's services conferred a significant benefit to the Debtors' estates and creditors and were critical to the success of these cases. With A&M's assistance, the Debtors were able to negotiate and confirm a consensual plan of reorganization in approximately three months.

## Interim Compensation Procedures

13. On April 22, 2009, the Court entered the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Members of Official Committees [*Docket No. 62*] (the "Interim Compensation Order") pursuant to which A&M and other professionals retained in these cases were authorized to file and serve upon the parties identified therein (the "Notice Parties") monthly fee statements or invoices (the "Monthly Fee Statements"). The Notice Parties had twenty days from the date of service of a Monthly Fee Statement to object to the amounts requested therein. If no objection was filed prior to expiration of the objection period, the Debtors were authorized to pay the respective professionals eighty percent (80%) of the fees and 100% of the expenses sought in the Monthly Fee Statement.

14. In addition to the Monthly Fee Statements, professionals were authorized to seek interim allowance and payment of compensation (including the 20% holdback) and expense reimbursement. Pursuant to the Interim Compensation Order, at four-month intervals (each an "Interim Fee Period"), each professional requesting interim compensation and expense reimbursement could file with the Court and serve on the appropriate parties an application for approval and allowance of all compensation and expense reimbursement that relates to services rendered and expenses incurred during the previous Interim Fee Period.

927082v.1/34153

15. Because these chapter 11 cases were resolved in less than four months, none of the case professionals, including A&M, filed an interim application for compensation and expense reimbursement. Accordingly, this Application is A&M's first and final application for allowance and payment of compensation and expense reimbursement.

## A&M's Retention

16. On April 3, 2009, the Debtors filed an application for an order authorizing the retention of A&M as their financial advisor pursuant to the terms of a letter agreement (the "Engagement Letter") between A&M and the Debtors dated as of January 10, 2009 [*Docket No. 29*]. A copy of the Engagement Letter was attached as Exhibit C to the application to employ A&M.

17. On April 23, 2009, the Court entered an order authorizing the employment of A&M as the Debtors' financial advisor effective as of the Petition Date [*Docket No. 68*] (the "Retention Order"). The Retention Order authorized the Debtors to retain A&M pursuant to the terms of the Engagement Letter (with certain modifications not relevent to this Application).

18. In addition, the Retention Order: (i) found A&M's fee structure (*i.e.*, the Monthly Fee and Restructuring Transaction Success Fee (each as defined in the Engagement Letter) to be reasonable (ii) provides that A&M's professionals are to be excused from the timekeeping requirements set forth in Local Rule 2016, and that A&M is instead required to present to the Court reasonably detailed descriptions of the services provided to the Debtors, identifying the individuals who provided professional services to the Debtors, (iii) provides that all of A&M's fees and expenses shall be subject to approval by the Court only in accordance with the standard set forth in section 328 of the Bankruptcy Code and, (iv) solely with respect to the U.S. Trustee, provides A&M's fees and expenses may be challenged under the reasonableness standard provided for in sections 330 and 331 of the Bankruptcy Code.

6

927082v.1/34153

### A&M's Monthly Fee Statements and Interim Payments Received

19. Pursuant to the Retention Order and the Interim Compensation Order, A&M served the following Monthly Fee Statements during these chapter 11 cases:

*First Monthly Fee Statement*

20. On May 20, 2009, A&M served the First Monthly Fee Application of Alvarez & Marsal Securities, LLC for Compensation for Services Rendered and Reimbursement of Expenses as Financial Advisor to the Debtors For the Period From April 1, 2009 through and including April 30, 2009, seeking payment of fees in the amount of $100,000.00 and reimbursement of expenses in the amount of $765.00. A&M received no objection to this request. Accordingly, pursuant to the Interim Compensation Order, the Debtors paid eighty percent (80%) of the fees requested ($80,000.00) and one hundred percent (100%) of the expense reimbursement requested ($765.00).

*Second Monthly Fee Statement*

21. On June 30, 2009, A&M served the Second Monthly Fee Application of Alvarez & Marsal Securities, LLC for Compensation for Services Rendered and Reimbursement of Expenses as Financial Advisor to the Debtors For the Period From May 1, 2009 through and including May 31, 2009, seeking payment of fees in the amount of $100,000.00 and reimbursement of expenses in the amount of $589.00. A&M received no objection to this request. Accordingly, pursuant to the Interim Compensation Order, the Debtors paid eighty percent (80%) of the fees requested ($80,000.00) and one hundred percent (100%) of the expense reimbursement requested ($589.00).

22. A&M did not file a monthly fee statement for the period from June 1, 2009 through and including June 30, 2009. All fees and expenses for the period from June 1, 2009 through and including June 30, 2009 are included in this final fee Application.

23. Pursuant to the Interim Compensation Order, A&M has received aggregate payments in the amount of $161,354.00 (the "Interim Payments").

24. This is A&M's first and final Application. By this Application, A&M seeks final allowance of compensation in the amount of $2,900,000.00 and expense reimbursement in the amount of $2,219.87 for a total of $2,902,219.87. A&M requests allowance, on a final basis, in the amount of $2,902,219.87 and requests payment in the amount of $2,740,865.87, representing $2,902,219.87 less the amount of all Interim Payments received ($161,354.00). A detailed summary of A&M's requested fees and expenses is attached hereto as **Exhibit A**.

### A&M's Compliance with Local Rule 2016-2

25. Pursuant to Local Rule 2016-2, A&M represents that it does not charge for copying, scanning, printing or facsimiles. Time records reflecting the specific tasks performed by each A&M professional during the Application Period are attached hereto as **Exhibit B**. Detailed descriptions of the actual and necessary expenses incurred by A&M, organized by expense category, are attached hereto as **Exhibit C**. Additionally, attached hereto as **Exhibit D** is the verification of George Varughese as to A&M's compliance with Local Rule 2016-2. Accordingly, A&M believes that it has substantially complied with Local Rule 2016-2.

### The Circumstances Under Which A&M's Services Were Performed

26. The Debtors' chapter 11 cases required A&M professionals to address complex restructuring and financial matters within a limited time frame. Prior to the Petition Date, the Debtors entered into a plan support agreement whereby the Debtors were required to obtain an order confirming a chapter 11 plan of reorganization by June 29, 2009. As a result of the expedited nature of the Debtors' cases, A&M professionals were required to complete a number of tasks within a very short time frame. A&M professionals, together with the Debtors' management and counsel, worked on two tracks: (a) to accomplish the necessary chapter 11

milestones including all of the supporting financial analyses relating to the Plan and Disclosure Statement, and (b) to negotiate a consensual plan with the Debtors' competing creditor constituencies including the formulation of a business plan and financial projections.

27. As a result of the coordinated efforts of the Debtors' management team, Proskauer, and A&M, the Debtors confirmed a chapter 11 plan in less than four months. The Plan maximizes the recoveries of all of the Debtors' creditors while allowing the Debtors to de-leverage their balance sheet and implement a going-forward business plan. A&M submits that its services were instrumental to the success of these chapter 11 cases.

### The Nature of A&M's Services

28. A&M has been instrumental in the Debtors' reorganization process since its beginning. Both prior to and after the Petition Date, A&M, together with Proskauer, assisted the Debtors in negotiations with the Debtors' various creditor constituiencies and in formulating and implementing a consensual restructuring process which not only maximized value for all stakeholders, but also resulted in the Debtors emerging from bankruptcy as a healthier, more competitive enterprise with a substantially de-leveraged balance sheet and more efficient operations.

29. A&M's services included, without limitation: (a) assisting the Debtors in preparing revised forecasts, analyzing the Debtors' capital and funding requirements based on such forecasts, and interfacing with the Consenting First Lien Lenders and the Consenting Second Lien Lenders regarding the same; (b) assisting the Debtors and their counsel in negotiating the terms of the cash collateral budget, the New Management Incentive Plan, the New Senior Secured Term Loan, the New Senior Secured Notes and other financial aspects of the Plan; (c) assisting the Debtors with the formulation, evaluation and implementation of various options for a restructuring or reorganization; (d) assisting the Debtors in negotiating the

9

terms of the Plan Support Agreement; and (e) providing financial advisory services to the Debtors in connection with formulating the Plan.

30. In connection with its services, A&M seeks compensation in the amount of $2,900,000.00. Pursuant to the terms of the Engagement Letter, this amount is comprised of (i) Monthly Fees for the period from April 1, 2009 through and including June 30, 2009 in the amount of $300,000.00, plus (ii) the Restructuring Transaction Success Fee in the amount of $2,750,000.00, less (iii) $150,000.00, representing a 50% credit of Monthly fees beginning with A&M's fourth month of engagement against the Restructuring Transaction Success Fee.

### Disbursements (Total Expenses: $2,219.87)

31. A&M has incurred expenses in the amount of $2,219.87 for transportation expenses. Each expense was reasonable and necessarily incurred in rendering services to the Debtors in these cases. Detailed schedules of the expenses incurred by A&M during the Application Period are set forth, and incorporated herein by reference, in **Exhibit C** hereto.

### Applicable Legal Standards and Criteria

32. The Court may award a professional employed by the estates "reasonable compensation for actual, necessary services" rendered by the professional, plus "reimbursement for actual, necessary expenses" under Section 330 of the Bankruptcy Code. See 11 U.S.C. § 330(a)(1). See generally In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 840 (3d Cir. 1994); In re Armstrong World Industries, Inc., 366 B.R. 278, 280 (D. Del. 2007); In re Channel Master Holdings, Inc., 309 B.R. 855, 861 (Bankr.D. Del. 2004); Accord In re ITC Deltacom, Inc., 2006 WL 839395 (D. Del. March 29, 2006) (affirming bankruptcy court's allowance of financial advisor fees as actual, necessary expenses).

33.     Section 330 of the Bankruptcy Code, by its terms, is "subject to" the provisions of section 328 of the Bankruptcy Code. 11 U.S.C. § 330. Section 328(a) permits a debtor, with the Court's approval, to employ professional persons "on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent basis." 11 U.S.C.§ 328(a).

34.     Once the terms of a professional's retention have been approved under section 328(a), the agreed-upon compensation cannot be altered unless the agreed terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. 328(a); see also In re Reimers, 972 F.2d 1127, 1128 (9th Cir. 1992) (compensation agreement approved under section 328(a) must be enforced in the absence of unforeseeable circumstances, and is not subject to a "reasonableness" review under section 330); In the Matter of Nat'l Gypsum Co., 123 F.3d 861 (5th Cir. 1997) (same); In re Olympia Holding Corp., 176 B.R. 962, 964 (Bankr. M.D. Fla. 1994) (same). As the court explained in National Gypsum:

> If the most competent professionals are to be available for complicated capital restructuring and the development to successful corporate reorganizations, they must know what they will receive for their expertise and commitment. Courts must protect those agreements and expectations, once found to be acceptable.

123 F. 3d at 863.

35.     In this case, the Retention Order provides that A&M will receive, pursuant to the terms of the Engagement Letter (a) Monthly Fees (as specified in the Engagement Letter); (b) the Restructuring Transaction Success Fee (as set forth and defined in the Engagement Letter); and (c) reimbursement of its expenses. The Retention Order further provides that "all such fees and expenses shall be subject to approval by the Court only in accordance with the standard set forth in section 328(a) of the Bankruptcy Code." Retention Order, ¶ 3.

### Application of Relevant Criteria and Standards to this Application

36. In applying the criteria set forth above to this Application, A&M respectfully submits that: (a) all of the services performed by A&M were required in these cases, were authorized by the Court, and were performed by A&M at the request and direction of the Debtors; (b) the compensation and reimbursement of expenses requested in this Application are in accordance with the terms of the Engagement Letter and the Retention Order pursuant to section 328(a) of the Bankruptcy Code; and (c) no unforeseeable developments have arisen during these cases that would render the approval of A&M's fees to have been "improvident" within the meaning of section 328(a) of the Bankruptcy Code.

37. Moreover, the services rendered by A&M to achieve the results obtained for the benefit of the estates' creditors was reasonable in light of the: (a) complexity of the issues involved in these cases; (b) skill required to properly perform the financial advisory services rendered by A&M; (c) preclusion of other similar employment; (d) customary fees charged to clients in non-bankruptcy situations for similar services rendered; (e) time constraints required by the exigencies of the cases; (f) experience, reputation and ability of the professionals rendering services; (g) time and labor required; and (h) the success of the Debtors in effecting a recapitalization through confirmation and consummation of the Plan.

### Statement Pursuant to Section 504 of the Bankruptcy Code and Bankruptcy Rule 2016

38. No agreement or understanding prohibited by section 504 of the Bankruptcy Code exists between A&M and any third person for the sharing of compensation received by A&M in these cases.

39. Pursuant to Bankruptcy Rule 2016(a), no payments have heretofore been made or promised to A&M for services rendered or to be rendered in any capacity in connection with

these cases, except as described in this Application in connection with prior Monthly Fee Statements.

## Notice

40. In accordance with the Interim Compensation Order, notice of this Application has been given to: (a) the Debtors; (b) counsel to the Debtors; (c) the Prepetition Agent for the First Lien Lenders; (d) counsel to the Prepetition Agent for the First Lien Lenders; (e) the Prepetition Agent for the Second Lien Lenders; (f) counsel to the *ad hoc* group of Second Lien Lenders; and (g) the United States Trustee. In light of the nature of the relief requested, A&M submits that no further notice is required.

## Conclusion

WHEREFORE, A&M respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit E**: (a) granting this Application on a final basis; (b) approving final compensation in favor of A&M in the amount of $2,900,000.00 for actual, necessary and reasonable professional services rendered on behalf of the Debtors from April 1, 2009 through and including June 30, 2009; (c) approving final reimbursement of expenses in favor of A&M in the amount of $2,219.87 for actual, necessary and reasonable expenses incurred on behalf of the Debtors from April 1, 2009 through and including June 30, 2009; (d) directing the Debtors to pay to A&M the difference between the amounts allowed hereunder and the amounts previously paid to A&M; and (e) granting such other and further consistent relief as the Court may deem equitable and just.

Respectfully Submitted,

Dated: July 31, 2009  
Wilmington, Delaware

By: /s/ George Varughese  
George Varughese  
Managing Director  
ALVAREZ & MARSAL SECURITIES, LLC  
600 Lexington Avenue, 6th Floor  
New York, New York 10022